UNITED STATES of America,
Plaintiff,

v.

W.R. GRACE, Alan R. Stringer, Henry A. Eschenbach, Jack W. Wolter, William J. McCaig, Robert J. Bettacchi, O. Mario Favorito, Robert C. Walsh, Defendants.

No. CR 05–07–M–DWM.

United States District Court,
D. Montana,
Missoula Division.

Sept. 5, 2006.

Kris A. McLean, Office of the U.S. Attorney, Missoula, MT, William W. Mercer, Office of the U.S. Attorney, Billings, MT, Thomas L. Sansonetti, David M. Uhlmann, U.S. Department of Justice, Washington, DC, for Plaintiff.

Angelo J. Calfo, Harold Malkin, Michelle K. Peterson, Yarmuth Wilsdon Calfo, Seattle, WA, David S. Krakoff, Gary A. Winters, James T. Parkinson, Mark Holscher, Mayer Brown Rowe Maw LLP, Washington, DC, Jeremy Maltby, O'Melveny & Myers, Los Angeles, CA, William Adam Duerk, Michael J. Milodragovich, Milodragovich Dale Steinbrenner & Binney, Michael F. Bailey, Bailey & Antenor, Missoula, MT, Elizabeth Van Doren Gray, Sowell Gray Stepp & Lafitte, Columbia, SC, Palmer A. Hoovestal, Hoovestal Law

Firm, Ronald F. Waterman, Gough Shanahan Johnson & Waterman, Helena, MT, William A. Coates, Roe Cassidy Coates & Price, Greenville, SC, Stephen R. Spivack, Bradley Arant Rose & White, Washington, D.C., David E. Roth, Bradley Arant Rose & White LLP, Birmingham, AL, for Defendants.

ORDER

MOLLOY, Chief Judge.

## I. Introduction

Defendants move to exclude both evidence derived from soil sampling conducted by EPA in its investigations at Libby, and expert testimony concerning that evidence. They argue that the government's expert disclosures and trial exhibit list suggests that it intends to rely upon such evidence in its attempt to prove the Clean Air Act charges. They contend that the data and testimony derived from this sampling is inadmissible under Rule 402, as it is not relevant to the Clean Air Act counts of the indictment; that it is inadmissible under Rule 702, as it does not satisfy the "fit" and reliability requirements set out in *Daubert;* and that it is inadmissible under Rule 403, as its admission would be unfairly prejudicial. The government contends that, contrary to Defendants' arguments, this evidence and testimony is derived from "direct air sampling and analysis," and is directly relevant to the "knowing endangerment" charges. Government's response at 2. It also argues that the soil evidence is relevant to the conspiracy and obstruction counts of the superseding indictment.

## II. Background

In performing its CERCLA determinations in 1999, EPA conducted sampling of air, dust, soil, and insulation at various locations around Libby in order to determine the nature and extent of the asbestos contamination in the community. These locations included some of those identified in the Clean Air Act counts of the indictment, but were not limited to them. The data generated from this sampling was used by EPA to create estimates concerning the exposure and risk associated with the sites as a means to prioritize or otherwise determine the direction and scope of its cleanup efforts.

Defendants identify four "problems" with the governments reliance on soil sampling data. They argue that:

1) the sampling results reflect only the concentrations of asbestos contained within the soil at the sites and not the concentrations in the air.

2) not only has the government failed to provide a methodology for making correlations between soil concentrations and airborne concentrations resulting from a release, but also that documents demonstrate that the government's own experts are skeptical that such correlations can be made.

3) the results of the soil sampling are compromised because they include non-respirable cleavage fragments, thereby overstating asbestos concentrations.

4) EPA did not, and realistically could not, make any determinations about the historical origin of the asbestos of the soils it tested, and thus, that these test necessarily include an indeterminate amount of asbestos deposited both before Grace owned the Libby Mine and before the start of the alleged conspiracy in 1976.

Defendants maintain that any attempt by the government and its experts to use soil sampling data to prove the concentration or risk level associated with the charged releases should be excluded under the reliability requirement of Federal Rule of Evidence 702 articulated in *Daubert*. They assert that "neither the Government nor its experts have identified any scientifically valid and reliable method for extrapolating airborne asbestos exposures from asbestos-fibers located in soil or soil like media." Defendants' motion at 12. The absence of any described methodology, Defendants contend, makes any such evidence simply inadmissible under 702 and

does not require the Court to even reach the "reliability" analysis set out in *Daubert.*

The government counters that the data it intends to use is derived from air sampling conducted around Libby, and that its experts are relying on this air data when making their determinations. The experts are not, the government contends, basing their analyses on any method of mathematical or statistical extrapolations from soil concentration levels.

### III. Analysis

Defendants' contention that soil sampling data is completely irrelevant to the Clean Air Act counts of the indictment is too categorical. The existence, or lack thereof, of asbestos fibers in "soil or soil like media" is integral to the charged acts in this case. The governments' theory is that asbestos fibers in soil were released into the air upon disturbance of that soil by various means, and that Defendants are responsible for these releases. If the sampling were to show that no asbestos fibers existed in the soil at the relevant sites, it would obviously speak to the validity of that theory. Conversely, the existence of asbestos at these sites is relevant to the question of whether soil disturbance at those sites led to releases of fibers falling within the ambit of 42 U.S.C. § 7413(c)(5)(A).

Defendants are on firmer ground in their argument that soil sampling evidence is irrelevant and unreliable for the purposes of establishing the concentrations or risk associated with the particular releases for which they have been charged. Any attempt at correlating soil concentrations with those present in an ambient release necessarily must entail the use of expert testimony to establish this link. In order for this testimony to be admissible, it must satisfy the reliability and relevance requirements established by Federal Rule of Evidence 702 as interpreted by the Supreme Court in *Daubert.* Defendants point to the case of *In re Armstrong World Indus.*, in which a bankruptcy court determined that an indirect method for calculating airborne asbestos fiber concentrations did not meet the requirements of 702, in order to bolster their argument. 285 B.R. 864 (Banker.D.Del.2002). This method consisted of extrapolating data obtained through the analysis of surface dust concentrations of asbestos fibers to determine airborne fiber levels. The court determined that not only was expert testimony concerning data obtained by the novel method inadmissible under the reliability prong of *Daubert,* but also irrelevant, because the data collected did not reflect the airborne concentrations at issue in the dispute.

█ The reasoning employed by the *Armstrong* court is convincing when applied to the present case. Soil asbestos sampling provides information regarding asbestos concentrations present in the soil. It does not directly provide information about fiber concentrations in airborne releases resulting from the disturbance of that soil. The government has not presented a description of a methodology explaining how the knowledge only of the concentration of asbestos fibers in soil like media can reliably be used to identify the concentration present in a release into the air of those fibers when disturbed. Expert testimony attempting to make such claims would appear to necessarily rely upon an expert's "bald assurance of validity," and does not satisfy the requirements of Rule 702. *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 43 F.3d 1311, 1316 (9th Cir.1995) (*"Daubert II"*).

█ As has been the case in similar motions, Defendants fail to take into consideration the relevance the disputed

evidence has to the conspiracy and obstruction counts of the indictment. The existence and concentration of asbestos in soils at the locations identified in those counts is relevant to the question of whether or not Defendants' misrepresented the nature and degree of contamination in Libby to government investigators. As such, soil sampling data, and expert testimony based upon that data, meets Federal Rule of Evidence 401's definition of relevance and is admissible under Federal Rule of Evidence 402 as it relates to these counts of the indictment.

The Defendants' argument that the data in question is compromised because of the failure to remove non-respirable cleavage fragments from the fiber counts is more appropriately raised at trial than through an evidentiary objection. It appears that there is some scientific disagreement as to the dangerousness of cleavage fragments and as to how these fragments should be treated when performing asbestos sampling. It is not the Court's role to settle scientific disputes. That EPA sampling did or did not take cleavage fragments into account, and the significance of this fact, is an issue going to the weight of the evidence, and is best left to the jury.

Whether W.R. Grace is responsible for the presence of the asbestos contained within the soil at the relevant sites is likewise an issue for the jury. The government bears the burden of demonstrating the contamination's provenance. Defendants' argument that the contamination predates the charged conspiracy or Grace's involvement with Libby is properly made at trial.

## IV. Order

For the foregoing reasons IT IS HEREBY ORDERED that Defendants' joint motion in limine to exclude evidence regarding soil sampling is GRANTED with respect to such evidence offered for the purpose of establishing asbestos concentrations of the ambient releases charged under 42 U.S.C § 7413(c)(5)(A).

It is DENIED with respect to such evidence offered for the purposes of establishing the presence of asbestos fibers in the pertinent soils, a fact relevant to various counts of the Indictment.